IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| EARL HAASE | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 02-110 |
| GOVERNMENT OF THE VIRGIN ISLANDS | : | |

## MEMORANDUM OPINION

**Savage, J.**                                                                 November 17, 2009

Earl Haase filed this employment discrimination action against his employer, the Government of the Virgin Islands (the "Government"), alleging unlawful discrimination in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* (Count I); discrimination under the Virgin Islands Civil Rights Act, 10 V.I.C. § 64 and 24 V.I.C. § 451 (Count II); breach of contract (Count IV); and intentional and negligent infliction of emotional distress (Count V).[1] Moving for summary judgment, the Government argues that Haase's discrimination claims are, in part, barred by Title VII's 300-day statute of limitations and the Virgin Islands Civil Rights Act's bar on private actions. It also contends that Haase cannot establish that the Government breached any contract. Finally, the Government contends that Haase's tort claims for intentional and negligent infliction of emotional distress are barred because he failed to comply with the requirements of the Virgin Islands Tort Claims Act.

Because his discrimination claims for acts that accrued before September 14, 2000 are barred by the statute of limitations, the Government is entitled to judgment as a matter

---

[1] On April 4, 2008, Judge Raymond L. Finch dismissed Haase's claim for misrepresentation (Count III) and portions of his claim for breach of contract (Count IV), finding that they were barred by the statute of limitations.

1

of law with respect to those claims. However, his claim for equal pay is partially saved by the Fair Pay Act. Haase's contract cause of action fails because he has not demonstrated the existence of an enforceable contract. His tort causes of action cannot proceed because he did not comply with the notice requirements of the Virgin Islands Tort Claims Act. Therefore, the motion for summary judgment will be granted in part and denied in part.

**BACKGROUND**

On May 16, 1991, Haase, a white male from the continental United States, was hired as a project manager in the Division of Equipment Maintenance in the Department of Public Works on St. Croix ("Public Works Department"), for a salary of $30,000 per year.[2] After initially declining a job offer because he believed the salary was insufficient, Haase ultimately accepted the job when the Director of Personnel for Public Works allegedly informed him that he would receive additional step pay increases whenever classified employees received regular step increases.[3] On June 24, 1991, Haase elected exempt employee status.[4] On July 29, 1991, he began working at the Public Works Department.[5]

Haase alleges that since commencing his job in 1991, the Government has repeatedly discriminated against him because of his race, color, and national origin. He claims that due to this discrimination, he received lower pay; was denied benefits,

---

[2] Def.'s Mem. at Ex. 1.

[3] Pl.'s July 11, 2001 Aff. ¶ 1.

[4] Def.'s Mem. at Ex. 2. The Government avers that exempt non-union employees are not automatically granted step increases when classified employees receive step increase. Aff. of Kenneth Hermon, Def.'s Mem. at Ex. 10.

[5] Def.'s Mem. at Ex. 1.

2

promotions and transfers; and, received reduced job assignments and responsibilities in the following ways:

1. between July 29, 1991 and March 20, 2001, he was denied pay raises;[6]

2. between July 29, 1991 and July 11, 2001, he was denied equal pay for similar work performed by other employees;[7]

3. between July 29, 1991 and December 1, 2006, he was denied hazard pay and hazardous duty benefits;[8]

4. from July 29, 1991 through July 11, 2001, he was denied compensatory time off and overtime pay;[9]

5. on August 8, 1991, he was denied the managerial responsibilities that he was promised during employment negotiations;[10]

6. in the summer of 1992, his supervisors attempted to remove him from his position and transfer him to a less desirable position with the goal of replacing him;[11]

7. in the summer of 1995, he was denied an interview for, and promotion to,

---

[6] Pl.'s July 11, 2001 Aff. ¶ 3; Notices of Personnel Action, attached to Pl.'s Statement of Additional Facts at Ex. 37.

[7] Pl.'s July 11, 2001 Aff. ¶ 10.

[8] *Id.* ¶ 22; Virgin Islands Waste Management Authority Memo, attached to Pl.'s Statement of Additional Facts at Ex. 44.

[9] Pl.'s July 11, 2001 Aff. ¶ 5.

[10] *Id.* ¶ 4.

[11] *Id.* ¶ 6.

Director of Virgin Islands Department of Planning and Natural Resources;[12]

8. in February 1996, he was denied appointment as a federal court monitor;[13]

9. in November 1997, he was denied an interview for, and promotion to, Director of Environmental Services;[14]

10. in March 1997, his keys and certain job responsibilities were taken and given to another employee;[15]

11. in 1998, he was denied the responsibility of meeting with the Army Corps of Engineers;[16]

12. in the winter of 2000, he was not provided with employment-related tools and equipment including a camera, computer, and printer;[17]

13. on August 30, 2000, he was denied a promotion to Utilities Director for the Island of St. Croix in favor of Joseph Bradford ("Bradford");[18] and

14. on September 26, 2000, after confronting the acting commissioner about discrimination towards him—including the Bradford hiring—and informing him that he had filed an Equal Employment Opportunity Commission ("EEOC")

---

[12] *Id.* ¶ 7.

[13] *Id.* ¶ 8.

[14] *Id.* ¶ 9.

[15] *Id.* ¶ 11.

[16] *Id.* ¶ 12.

[17] *Id.* ¶¶ 13-15.

[18] *Id.* ¶¶ 16-17.

complaint for discrimination, he was relieved of several of his job responsibilities.[19]

When confronted about discrimination charges on September 26, 2000, the acting commissioner represented to Haase that Bradford was only hired as acting director and, therefore, Haase could not file an EEOC complaint.[20] However, on March 2, 2001, after reviewing Bradford's employment file, Haase learned that Bradford had actually been hired as a full-time director.[21] Haase subsequently filed an EEOC complaint on July 11, 2001.[22] He received his right to sue letter on June 21, 2002.[23] He filed his complaint on August 20, 2002.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In examining the motion, the facts are viewed in the light most favorable to Haase, as the nonmoving party, and all reasonable inferences are drawn in his favor. *Intervest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

As the party moving for summary judgment, the Government bears the initial burden of demonstrating that there are no genuine issues of material fact. Fed. R. Civ. P. 56(c). To defeat summary judgment, Haase cannot rest on the pleadings. He must

---

[19] *Id.* ¶ 18.

[20] *Id.* ¶¶ 17, 19, 21.

[21] *Id.* ¶ 19; Bradford Appointment Letter, attached to Def.'s Mem. at Ex. 34.

[22] *See* EEOC Complaint, attached to Def.'s Mem. at Ex. 7.

[23] Pl.'s Statement of Additional Facts at Ex. 17.

come forward with probative evidence establishing the *prima facie* elements of his claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005). He must show more than the "mere existence of a scintilla of evidence" for elements on which he bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). An inference based upon speculation or conjecture does not create a material fact. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for [Haase,] the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## DISCUSSION

### Title VII Statute of Limitations Tolling

The Government argues that Haase's discrimination claims that accrued more than 300 days before he filed his complaint with the EEOC on July 11, 2001 are time-barred. Citing the 42 U.S.C. § 2000e-5(e) filing requirements, it moves for summary judgment only on claims arising from incidents occurring more than 300 days before Haase's EEOC filing. It calculates that based on the date of Haase's EEOC filing, July 11, 2001, discrimination claims arising from discrete discriminatory acts occurring before September 14, 2000 are untimely.

A plaintiff in the Virgin Islands must file his charge of discrimination with the EEOC within 300 days of the discriminatory act.[24] *See Bostic v. AT&T*, 166 F. Supp. 2d 350, 356

---

[24] Pursuant to 42 U.S.C. § 2000e-5(e)(1), a plaintiff ordinarily must file his charge within 180 days of the discriminatory act. However, in jurisdictions where there is a parallel state or territorial administrative entity for investigating complaints of discrimination, such as the Virgin Islands, a plaintiff has 300 days to

(D.V.I. 2001) (citing 42 U.S.C. § 2000e-5(e)(1) and *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000)). Thus, discriminatory acts that occurred more than 300 days before the filing of an EEOC claim are barred by the statute of limitations. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) ("A claim is time barred if it is not filed within these time limits.").

Discrete discriminatory acts that occurred before the statutory time period are not actionable under Title VII. *See Morgan*, 536 U.S. at 110. The Supreme Court has provided a "non-exhaustive list of discrete acts for which the limitations period runs from the date of the act: termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, wrongful accusation." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) (citing *Morgan*, 536 U.S. at 114). "[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Morgan*, 536 U.S. at 112. All acts related to a timely hostile work environment claim, however, may be considered even if the acts occurred outside the 300-day period as long as one contributing act occurs within the time period. *Id.* at 117 ("A hostile work environment claim is comprised of a series of separate acts that collectively constitute one unlawful employment practice.") (citations omitted).

*Morgan* distinguishes between individual discriminatory acts that constitute separate causes of action and linked acts that together make out a single cause of action. *See id.* at 114-15. *Morgan* sets out examples of discrete discriminatory acts of the former category. *Id.* at 114. Those acts cannot be aggregated to link time-barred claims to a timely claim under a continuing violation theory. *Id.* Although a discrete act may have a

---

file. *See Mohasco Corp. v. Silver*, 447 U.S. 807, 834 (1980); 29 CFR 1601.74(a).

connection to other acts, that is, motivated by the same discriminatory animus, it is not linked to the other acts for the purpose of determining whether it falls within the statutory period. In short, discrete acts cannot be aggregated under a continuing violations theory of limitations tolling. *See O'Connor*, 440 F.3d at 127.

The majority of Haase's claims for discrimination involve discrete acts occurring before the 300-day period. Like the *Morgan* acts, each instance of discrimination cited by Haase is a discrete act that "'occurred' on the day it 'happened.'" *See Morgan*, 5136 U.S. at 110. Furthermore, Haase does not allege or provide evidence of a hostile work environment claim.[25] *See Id.* at 116. ("[W]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.") (citations omitted). Therefore, Haase's discrimination claims arising from discrete acts occurring before the 300-day period are barred by the statute of limitations.

Although neither party addressed it, the "Lilly Ledbetter Fair Pay Act of 2009" (the "Fair Pay Act") Pub. L. No. 111-2, 123 Stat. 5, which amended 42 U.S.C. § 2000e-5(e), is implicated here. The amendment is retroactive to May 28, 2007, and applicable "to all claims of discrimination in compensation under title VII of the Civil Rights Act of 1964 . . . that are pending on or after that date." Pub. L. 111-2, § 6. Because Haase's case was pending at that time, the Fair Pay Act applies to his equal pay claim.

Finding that "the Supreme Court in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550

---

[25] Haase alleges only a single incident of discrimination-based hostile behavior, which occurred in 1992. *See* Compl. ¶ 14.

U.S. 618 (2007), significantly impairs statutory protections against discrimination in compensation" and that the "decision undermines those statutory protections by unduly restricting the time period in which victims of discrimination can challenge and recover for discriminatory compensation decisions or other practices," 42 U.S.C. §2000e-5 note, Congress passed the Lilly Ledbetter Fair Pay Act of 2009. It amended §2000e-5 as follows:

> For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.

2000e-5(e)(3)(A).

Congress also established a back pay recovery period of two years. Section 2000e-5(e)(3) includes the following provision:

> (B) In addition to any relief authorized by [42 U.S.C. §1981s], liability may accrue and an aggrieved person may obtain relief as provided in [42 U.S.C. §2000e-5(g)(1)], including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.

The legislative history reveals that Congress intended to create a back pay recovery period that was longer than the statute of limitations. It stated that victims of pay discrimination

9

> are entitled to the full back pay amount available-up to two years of back pay as already provided under [42 U.S.C. § 2000e-5(g) (1)]. This section is added to ensure that back pay in cases such as Ledbetter are not limited to 180 [or 300] days. The statute of limitations period and the back pay recovery period are two separate periods in the [FPA].

H.R. Rep 110-237, at 19 (2007). Therefore, as long as pay discrimination is "similar or related to" the employment practice that is the subject of the timely-filed charge, the plaintiff may recover back pay for pay discrimination that occurred during the two-year period preceding the filing of the charge. See *Holloway v. Best Buy Co.*, Inc., 2009 WL 1533668, at *7 (N.D.Cal. May 28, 2009).

The Third Circuit's decision in *Mikula v. Allegheny County*, 583 F.3d 181 (3d Cir. 2009) creates the impression that the recovery period is limited to 300 days rather than two years. After analyzing the statute of limitations issue presented under §2000e-5(e)(3)(A), the Third Circuit found that Mikula's pay discrimination claim was "timely as to pay checks she received 300 days before she filed her EEOC charge if they were the result of a 'periodic implementation' of a previously made intentionally discriminatory employment decision or 'other practice.'"

The *Mikula* court inexplicably failed to mention the two-year recovery period provision of §2000e-5(e)(3)(B). The statement that Mikula's claim as to pay checks received within the 300 day period of the EEOC charge was timely was not the holding of the case. Rather, it was a preface to the court's holding that addressed what constituted a compensation decision giving rise to a claim of an unlawful employment practice for purposes of computing the statute of limitations. It held that "the failure to answer a request for a raise qualifies as a compensation decision because the result is the same

10

as if the request had been explicitly denied." *Id*. at 186. Thus, the *Mikula* court was faced with a statute of limitations issue and not a recovery limitations one.

Haase asserts a discriminatory pay claim starting July 29, 1991. He filed his EEOC complaint on July 11, 2001. Consequently, he must prove that he received discriminatory pay within 300 days before the filing of the complaint, that is, after September 14, 2000. If he can establish that he received unequal pay as a result of discriminatory compensation decisions or other practices during the 300 day period, he can recover back pay for pay discrimination that occurred during the preceding two-year period so long as the earlier discrimination is "similar or related to" compensation decisions or practices that occurred during the 300 day period.

### Equitable Tolling

The parties dispute when Haase's discrimination claim based on Joseph Bradford's promotion accrued. The Government contends that the claim accrued on August 30, 2000, when Haase received a memorandum congratulating Bradford on his promotion to director, which places the act outside of the limitations period and bars it from consideration. Haase argues that the claim should be equitably tolled until March 2, 2001, the date he reviewed Bradford's personnel files and determined that the acting commissioner had misled him regarding the nature of Bradford's appointment.

"Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994). It may be appropriate to apply equitable tolling where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action. *See Id*.

Haase provided evidence that the acting commissioner told him that despite what the memorandum announcing Bradford's appointment stated, Bradford had only been appointed to director in an acting capacity. Pl.'s July 11, 2001 Aff. ¶ 17. The Government disputes that Haase had been actually misled. *See* Def.'s Reply 4. Because there is a genuine issue of material fact as to whether the Government misled Haase, and when Haase knew or should have known that a cause of action for discrimination had accrued, Haase's claim of discrimination with respect to the promotion survives summary judgment.[26]

## Virgin Islands Civil Rights Act

The Government argues that Haase's discrimination claims pursuant to Titles 10 and 24 of the Virgin Islands Civil Rights Act (the "V.I. Civil Rights Act") must be dismissed because he lacks standing to bring an action under these provisions.[27] Chapter 5 of Title 10 provides for the creation of the Virgin Islands Civil Rights Commission ("Commission"), which has jurisdiction to enforce the Title 10 provisions and, among other rights and

---

[26] The factual issue regarding whether Haase was misled may be submitted to the jury with a special interrogatory.

[27] The relevant portion of Title 10 provides:

> It shall be an unlawful discriminatory practice: (a) For an employer, because of age, race, creed, color, national origin, place of birth, sex and/or political affiliation of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

10 V.I.C. § 64. The relevant portion of Title 24 provides:

> Notwithstanding the provisions of any other law, it shall be unlawful employment practice or unlawful discrimination . . . For an employer to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment because of race, sex, age, religion, color or ancestry.

24 V.I.C. § 451.

responsibilities, to bring a civil suit on behalf of a victim of discrimination. *See* 10 V.I.C. §§ 62, 71, 73. Similarly, Chapter 17 of Title 24 of the V.I. Civil Rights Act grants the Department of Labor ("Department") jurisdiction over the discriminatory and other unlawful employment practices referenced in Title 24. *See* 24 V.I.C. § 452.

Only the Commission can enforce 10 V.I.C. § 64 because the statute does not provide for a private cause of action. *See Speaks v. Gov't of the V.I.*, 2009 U.S. Dist. LEXIS 3565, at *6-7 (D.V.I. Jan. 14, 2009) (holding that the Virgin Islands Legislature did not intend to create a personal right of action under Title 10); *Miller v. V.I. Hous. Auth.*, 2005 U.S. Dist. LEXIS 11146, at *16 n.4 (D.V.I. June 3, 2005) (overruling the court's prior decision in *Ramos v. St. Croix Alumina*, L.L.C., 277 F. Supp. 2d 600 (D.V.I. 2003), and holding Title 10 did not create a private cause of action). Nor is there a private cause of action pursuant to 24 V.I.C. § 451, the statute governing employment discrimination. *See Miller*, 2005 U.S. Dist. LEXIS 11146, at *15 ("[T]he Court agrees that if the Legislature had intended to create a private cause of action for pursuing relief from the discriminatory practices identified in 24 V.I.C. § 451 and 10 V.I.C. § 64, it should have done so 'in clear and unambiguous terms.'" (citations omitted)); *Frorup-Alie v. V.I. Hous. Fin. Auth.*, 2003 U.S. Dist. LEXIS 25395, at *9 (D.V.I. Oct. 24, 2003) (reaffirming that there is no private right of action under 24 V.I.C. § 451). Accordingly, Count II of the complaint seeking relief pursuant to the Virgin Islands Civil Rights Act will be dismissed.

### Breach of Contract

The Government moves for summary judgment on Haase's remaining contract claim that it breached an agreement that Haase, an exempt employee, would receive a

step increase in pay whenever classified employees received step increases.[28] Haase argues that the Director of Personnel for Public Works verbally promised that he would receive step increases, and that these negotiations were memorialized in a letter that he sent to the Commissioner when he accepted his position. The Government avers that Haase cannot establish that he entered into an enforceable contract with the Government because the Director of Personnel for Public Works is not authorized to grant exempt employees salary increases on behalf of the Government[29], and because Haase offers no evidence of a written contract with the Government that memorializes any step increases in pay.

"[C]ontracts with agents of the Government must be in strict conformity with the authority conferred. The Government is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit." *Rios v. Lebron*, 2001 U.S. Dist. LEXIS 5538, at *12-13 (D.V.I. Apr. 12, 2001) (citing *In re Estate of Hooper*, 359 F.2d 569, 577 (3d Cir. 1966)). The Director of Personnel's authority is conferred by 3 V.I.C. § 452, which does not grant the individual holding the position any agency authority to negotiate employment contracts on behalf of the Government. Pursuant to 31 V.I.C. §§ 232 and 239(a)(4), the Commissioner of Property and Procurement "has exclusive authority to negotiate all open market purchases, including those for professional services." *See Smith v. Dep't of Educ.*, 942 F.2d 199, 201-202 (3d Cir. 1991). Furthermore, oral contracts with the Virgin Islands

---

[28] On April 4, 2008, Judge Finch dismissed all of Haase's other breach of contract claims, and limited the remaining claim to those breaches occurring after August 20, 1996.

[29] *See* Aff. of Kenneth Hermon, Def.'s Mem. at Ex. 10.

government are prohibited. *Smith v. Dep't of Educ.*, 751 F. Supp. 70, 74 (D.V.I. 1990) (citing Title 31 in its entirety). Haase does not dispute these arguments. Instead, he relies on his April 25, 1991 self-serving letter to Commissioner Leo Francis accepting his job position, as proof of a written contractual agreement for "regular, periodic pay raises."[30] The letter is not countersigned by the Government's authorized agent. Nor does it purport to confirm any understanding or agreement.

Haase has failed to provide any evidence to support his allegation that an agreement exists. The letter makes no mention of any offer or agreement covering step increases. The only reference to salary states: "I further understand that I will begin at an annual salary of $30,000.00 for this position and that fringe benefits will be provided, including life and medical insurance." Because Haase fails to meet his burden to show the existence of an agreement for step increases, the Government's motion will be granted as to Count IV.

**Virgin Islands Tort Claims Act**

The Government moves for summary judgment on Haase's tort claims for intentional and negligent infliction of emotional distress, citing Haase's failure to comply with the filing requirements of the Virgin Islands Tort Claims Act ("VITCA"), 33 V.I.C. §§ 3408 *et seq.* "Timely compliance with the VITCA's notice requirement is a jurisdictional prerequisite to bringing suit on a plaintiff's tort claims." *Speaks*, 2009 U.S. Dist. LEXIS 3565, at *12 (citing *Delgado v. Gov't of V.I.*, 137 F. Supp 2d 611, 615 (D.V.I. App. Div.

---

[30] Pl.'s Statement of Additional Facts 19; *id.* at Ex. 1.

The Government admits that a written professional services contract between the Commissioner and the employee may alter the relevant position's standard salary. Aff. of Kenneth Hermon, Def.'s Mem. at Ex. 10.

2001)). Under the VITCA:

> No judgment shall be granted in favor of any claimant unless such claimant shall have complied with the provisions of this section applicable to his claim:
>
> . . . .
>
> a claim to recover damages for injuries to property or for personal injury caused by the tort of an officer or employee of the Government of the Virgin Islands while acting as such officer or employee, *shall be filed within ninety days after the accrual of such claim unless the claimant shall within such time file a written notice of intention to file a claim therefor*, in which event the claim shall be filed within two years after the accrual of such claim.

33 V.I.C. § 3409(c) (emphasis added). Therefore, to satisfy the notice prerequisite of the Virgin Islands Tort Claims Act, a plaintiff must either file suit or give notice of intention to do so within 90 days of the accrual of the claim.

According to Haase, because his "claims accrued on March 2, 2001," when he discovered that Joseph Bradford had been hired as full-time director instead of him, he had until May 31, 2001 to file a claim or a notice of intention to file a claim. Yet, Haase did not file his EEOC claim until July 11, 2001, more than 130 days after this cause of action accrued. He did not file this civil action until August 20, 2002, more than 530 days after his cause of action accrued. Furthermore, Haase provides no evidence that he ever filed a notice of intention to file a claim within the prescribed 90-day period.

In his opposition to the Government's motion, Haase asserts that the VITCA notice requirements should be equitably tolled under the continuing violation doctrine. "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Cowell v. Palmer Twp.*, 263 F.3d 286, 293 (3d Cir. 2001). Thus, when applying the continuing violation doctrine for the purposes of a summary judgment

16

motion, we ask: (1) whether the alleged tort giving rise to the plaintiff's harm is recurring; (2) if so, whether the resulting injury is permanent; and (3) if so, when did the plaintiff know or could have known of the critical facts indicating that the injuries were likely to be permanent. *See In re Tutu Wells Contamination Litig.*, 909 F. Supp. 980, 988 (D.V.I. 1995) (citations omitted).

Haase does not offer any evidence of "recurring" discrimination after March 2, 2001. As stated above, Haase's discrimination claims involved discrete acts. When describing to his psychologist the specific reasons for filing his claim, Haase explained "[i]t was about ten years after being employed here [in 1991] that I finally decided this is too much . . . . [T]hey selected instead, an individual with no experience in wastewater whatsoever . . . . And that was just the straw that broke the camel's back. That was just too far."[31] These ten years of discrete discriminatory acts, including the precipitating act of the Government's promoting Bradford over Haase, cannot be the foundation of recurring acts of discrimination because they were each separate acts that were completed when committed. The next alleged discriminatory act after Bradford's promotion was a separate discrete act of retaliation occurring on July 19, 2001, in response to Haase filing his EEOC complaint. The next alleged discriminatory act specifically involving a denial of promotion did not occur until years later in October 2004. Therefore, because compliance with VITCA's notice requirement is a jurisdictional prerequisite, judgment will be entered in favor of the defendant on Haase's tort claims for intentional and negligent infliction of emotional distress in Count V. *Delgado v. Gov't of V.I.*, 137 F. Supp. 2d 611, 615 (D.V.I. App. Div. 2001)

---

[31] Pl.'s Statement of Additional Facts at Ex. 7, at 2-3.

## CONCLUSION

Applying the standards for Title VII statute of limitations tolling, all Title VII discrimination claims arising from discrete acts accruing before September 14, 2000, except the claim for equal pay, are timed barred. The equal pay claims are not barred by the 300 day statute of limitations but back pay recovery is limited to the period after July 11, 1999. Because there is a genuine issue as to whether Haase knew, or should have known, about Bradford's promotion before September 14, 2000, this discrete Title VII claim survives summary judgment. With respect to the remaining claims, summary judgment will be granted.